J & E INVESTMENT COMPANY, LLC *v.* WILLIAM
ATHAN ET AL.
(AC 30950)

DiPentima, C. J., and Robinson and Mihalakos, Js.

---

Argued May 24—officially released September 20, 2011

*Mark S. Rosenblit,* for the appellant (plaintiff).

*Gerald L. Garlick,* for the appellee (defendant Velocity Commercial Capital, LLC).

### Opinion

DiPENTIMA, C. J. The plaintiff, J & E Investment Company, LLC, appeals from the judgment of the trial court granting the motion of the defendant Velocity Commercial Capital, LLC,[1] to open and to set aside the stipulated judgment of strict foreclosure and the court's determination that the defendant's mortgage had priority over the plaintiff's mortgage. The plaintiff claims that the court improperly (1) opened the judgment pursuant to General Statutes (Rev. to 2007) § 49-15[2] despite

---

[1] The plaintiff also named William Athan and Jose Guzman as defendants, but they are not parties to this appeal. We therefore refer to Velocity Commercial Capital, LLC, as the defendant in this opinion.

[2] General Statutes (Rev. to 2007) § 49-15 (a) provides in relevant part that "[a]ny judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the same, upon the written motion

the fact that title previously had vested in the plaintiff[3] and (2) determined that the defendant's mortgage encumbered the property and was senior to the plaintiff's mortgage. We conclude that the court had the authority to open the judgment pursuant to § 49-15, and

of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a . . . but no such judgment shall be opened after the title has become absolute in any encumbrancer."

All references in this opinion to § 49-15 are to the 2007 revision unless otherwise indicated.

[3] The plaintiff also argued that if title did not vest, the trial court abused its discretion pursuant to General Statutes § 52-212. The plaintiff's challenge of the court's discretion pertains to the merits of the court's decision to open the judgment rather than to its authority to do so. We therefore lack jurisdiction to decide this claim on appeal. *PRI Capital Group, LLC* v. *Eastern Capital Funding, LLC,* 90 Conn. App. 1, 6–7, 878 A.2d 342 (2005). "Generally, the granting of a motion to open is not a final judgment from which an appeal will lie. . . . An appeal from the granting of a motion to open may be filed, however, where the authority of the trial court to do so is challenged." (Citation omitted.) *Byars* v. *FedEx Ground Package System, Inc.,* 101 Conn. App. 44, 46 n.2, 920 A.2d 352 (2007); see *Solomon* v. *Keiser,* 212 Conn. 741, 746–47, 562 A.2d 524 (1989); see also *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 418, 426 A.2d 1324 (1980). Accordingly, we address only the plaintiff's challenge to the trial court's power to open the judgment pursuant to § 49-15 and not its argument as to the merits of the case pursuant to § 52-212.

We note, however, that this court previously has stated that "the general provisions in [General Statutes] §§ 52-212 and 52-212a regarding motions to open default judgments must give way to the specific provision in . . . § 49-15 regarding the opening of judgments of mortgage foreclosures. See *Patry* v. *Board of Trustees,* 190 Conn. 460, 468, 461 A.2d 443 (1983) [(rules of construction assign precedence to provisions of special applicability over those of general applicability)] . . . ." (Citation omitted.) *Merry-Go-Round Enterprises, Inc.* v. *Molnar,* 10 Conn. App. 160, 161–62, 521 A.2d 1065 (1987).

In *Farmers & Mechanics Savings Bank* v. *Sullivan,* 216 Conn. 341, 579 A.2d 1054 (1990), our Supreme Court confirmed the separate standards applicable to opening default judgments, generally, and to opening a judgment of strict foreclosure. "Unlike . . . § 52-212, which provides for opening default judgments generally and requires a defaulted defendant to show that he had a good defense that he was prevented from making by 'mistake, accident or other reasonable cause,' § 49-15 prescribes only four conditions for opening a judgment of strict foreclosure: (1) that the motion be in writing; (2) that the movant be a person having an interest in the property; (3) that the motion be acted upon before an encumbrancer has acquired title; and

we dismiss the remainder of the plaintiff's appeal for lack of a final judgment.

During July, 2007, the plaintiff initiated this mortgage foreclosure action on property located at 349-351 Broad Street in New London (property). The complaint alleged that William Athan and Jose Guzman were indebted to the plaintiff in the principal amount of $25,000, evidenced by a promissory note, which was secured by Athan's mortgage on the property. The complaint provided that the defendant claimed an interest in the property prior in right to the plaintiff's mortgage and included the recorded volume and page number. It also alleged that the defendant "may claim an interest by virtue of a mortgage that may be recorded subsequently in the principal amount of $300,000," but failed to include a volume or page number identifying such mortgage.

The defendant was defaulted for failure to appear on August 21, 2007. Guzman was defaulted for failure to plead on September 13, 2007. The plaintiff and Athan entered into a stipulation for a judgment of strict foreclosure, pursuant to which the court rendered judgment on January 28, 2008. The defendant filed an appearance on February 7, 2008, and filed a motion to open the judgment of strict foreclosure on February 8, 2008 (first motion to open). In that motion, the defendant argued that it was the holder of a mortgage prior in right to the mortgage held by the plaintiff and that the plaintiff had actual notice of the defendant's mortgage. Specifically, the defendant alleged in its memorandum in support of its first motion to open that Athan obtained title to the property by deed recorded on March 22, 2007, but that the schedule A attached to the deed mistakenly

(4) that 'cause,' obviously good cause, be shown for opening the judgment." Id., 352–53; see *Falls Mill of Vernon Condominium Assn., Inc.* v. *Sudsbury*, 128 Conn. App. 314, 319, 15 A.3d 1210 (2011).

described the wrong property. The defendant alleged that on the same day, Athan granted it a mortgage that was recorded. The defendant also claimed that by a correcting deed dated April 5, 2007 (correcting deed), the original error was remedied, but on that day, Athan granted a mortgage to the plaintiff. The defendant argued that because the correcting deed was witnessed by the plaintiff's attorney and acknowledged by a member of the plaintiff, it had actual notice of the correction to the mistaken property description and of the previous deed and, in turn, had actual knowledge (or upon reasonable inquiry, should have had notice) of the defendant's previously recorded mortgage. The defendant contended in its first motion to open that its failure to appear was due to inadvertence, mistake or accident.[4] The plaintiff objected, and, on February 25, 2008, the court denied the first motion to open and set a new law day of April 14, 2008.

On March 3, 2008, the defendant filed a second motion to open the judgment[5] (second motion to open) in which it alleged, inter alia, that (1) it was improper for the defendant to have been named as a defendant in the plaintiff's complaint because its mortgage was prior in right to the plaintiff's mortgage, (2) the plaintiff

---

[4] While the plaintiff's case was pending, the defendant commenced its own mortgage foreclosure action on the property, naming the plaintiff and Athan as defendants. *Velocity Commercial Capital, LLC* v. *Athan*, Superior Court, judicial district of New London, Docket No. CV-07-5004301-S. The court granted a motion to consolidate that action with the present one on June 12, 2008. In conjunction with the first motion to open, the defendant filed an affidavit from the vice president of the servicer of the defendant's mortgage loan that indicated it was not until the plaintiff filed its disclosure of defense in the second foreclosure case that the defendant realized that the plaintiff was claiming its mortgage had priority.

[5] Although the motion was titled a motion to reopen, we note that because the judgment had not been opened previously, the use of that term is both improper and misleading. The appropriate phrase is "motion to open," and we reference it in this opinion accordingly. See *State* v. *Wahab*, 122 Conn. App. 537, 539 n.2, 2 A.3d 7, cert. denied, 298 Conn. 918, 4 A.3d 1230 (2010).

obtained the judgment of strict foreclosure by fraud, (3) by omitting the recording information regarding the defendant's mortgage in the complaint, the plaintiff concealed the priority issue from the court and should not be permitted to benefit from this omission, (4) the judgment of strict foreclosure would result in a "windfall" to the plaintiff, and (5) the defendant should have the opportunity to prove that the plaintiff had "actual and/or constructive knowledge of the priority of the [defendant's] mortgage and to have named it as a subsequent encumbrance was a material misrepresentation of fact . . . ." The defendant requested that the court open the judgment for the plaintiff to withdraw the action as to the defendant and to amend its complaint to reflect the priority of the defendant's mortgage. The court denied this motion on March 10, 2008.

On March 14, 2008, the defendant filed a motion for reargument and reconsideration of the court's denial of its first motion to open the judgment.[6] The defendant claimed that it had obtained new evidence from its separately filed foreclosure action; see footnote 4 of this opinion; establishing that the plaintiff knew Athan had intended to grant a first mortgage on the property to the defendant and that the plaintiff's mortgage was intended as a second mortgage. In response, the plaintiff claimed that "[n]either motion to reargue challenges the fact that [the defendant] has failed to provide the court with any *non-negligent* reason—as required by [Practice Book] § 17-43, [General Statutes] § 52-212 and the appurtenant case law—why it failed to appear in

---

[6] The parties agree that pursuant to Practice Book § 63-1 (c) (1), this motion did not create a new appeal period. Practice Book § 63-1 (c) (1) provides in relevant part: "If a motion is filed within the appeal period that, if granted, would render the judgment . . . ineffective . . . a new twenty day period . . . for filing the appeal shall begin on the day that notice of the ruling is given on the last such outstanding motion . . . .

"Motions that do not give rise to a new appeal period include those that seek . . . reargument of [motions to open a judgment]. . . ."

this action *prior to* the entry of judgment in order to assert the various defenses . . . ." (Emphasis in original.) On March 27, 2008, the defendant filed a motion to reargue the court's denial of the second motion to open judgment.

The court granted the defendant's first motion to reargue and held a hearing on the motions to open on May 19, 2008. After reconsidering the motions to open, the court granted the motions to open the judgment of strict foreclosure and ordered the certificate of foreclosure dissolved.[7] Subsequently, the court held a hearing to resolve the priority issues and "rendered judgment" from the bench reflecting that the defendant's mortgage held priority. This appeal followed.[8] Additional facts will be set forth as necessary.

I

The plaintiff claims that the court improperly opened the judgment of strict foreclosure because title had vested in the plaintiff, and, thus, § 49-15 deprived the trial court of authority to open the judgment. The defendant contends that the court made a valid order to stay

[7] Specifically, the court noted in its second articulation "the curious wording of the plaintiff's complaint, in which the plaintiff alleged that '[t]he [d]efendant . . . may claim an interest by virtue of a mortgage that *may* be recorded subsequently . . . .' " (Emphasis in original.) Thus, it found that "it was reasonable that the defendant's counsel did not realize that this action commenced by the plaintiff sought to foreclose a mortgage that was claiming priority over the defendant's mortgage."

[8] This court granted the plaintiff's December 11, 2009 motion to articulate "why [the trial court] granted [the defendant's] motion to open the judgment of strict foreclosure, particularly in light of the judgment of default [rendered against the defendant] for failure to appear" and June 1, 2010 motion to articulate "the factual basis for its conclusion that [the defendant's] failure to assert its defense . . . was due to mistake." This court further ordered, sua sponte, that the trial court articulate whether notice ever issued on the order to stay the law days or whether notice issued "in some other manner." The trial court articulated the basis of its decisions in four separate articulations.

the law days and, therefore, retained the authority to open the judgment. We agree with the defendant.

The following additional facts are relevant to our disposition of this claim. At the hearing on the motions to open held on May 19, 2008, the plaintiff argued that on April 16, 2008, after the law days, which commenced on April 14, 2008, had passed, title vested in the plaintiff. The plaintiff, therefore, disputed the court's authority to open the judgment pursuant to § 49-15 because "title [had] become absolute in [an] encumbrancer . . . ." General Statutes (Rev. to 2007) § 49-15. At this hearing, and in its subsequent articulation, the court represented that "[p]rior to the expiration of the April 14, 2008 law day, the court instructed the clerk to file an order and notify the parties that the law day was to be stayed until the court had the opportunity to consider the defendant's pending motions. The clerk did not, however, file an order or notify the parties." The court found that "[p]ursuant to the equitable nature of foreclosure proceedings, and in light of the inadvertent mistake by the court clerk, this court finds that § 49-15 does not preclude the court from exercising its discretion to open the judgment of strict foreclosure under the circumstances of the present case."

The plaintiff argues, inter alia, that without notice or publication, the court's order to stay never came into legal existence prior to the expiration of the law days. In the present case, the court made the factual finding that it ordered the April 14, 2008 law day stayed based on the judge's recollection of making that order. "[A] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record." (Internal quotation marks omitted.) *Ursini* v. *Barnett*, 124 Conn. App. 855, 858, 10 A.3d 1055 (2010), cert. denied, 299 Conn 924, 11 A.3d 152 (2011). We will not revisit the court's factual finding that it instructed the clerk to file an order and to notify

the parties when it based such finding on its own recall. Accordingly, the only issue is whether the failure of the trial court clerk to send notice to the parties or record the order renders that order ineffective.

We conclude that the court had the authority to open the judgment. The plaintiff offers minimal legal precedent supporting its claim that the court's order staying the law days would be ineffective under the facts of this case. The plaintiff noted that compliance with General Statutes § 51-53 is mandatory. Section 51-53 (a) provides in relevant part that "[w]henever any court . . . or the judge of any such court acting in any matter coming before him as a judge, makes or renders any decision, order, decree, denial, or ruling, unless it is made or rendered in the presence of counsel in the matter, the clerk of the court shall immediately notify counsel . . . ." We agree with the plaintiff that § 51-53 requires action by the clerk. See *Graham* v. *Zimmerman*, 181 Conn 367, 370, 435 A.2d 996 (1980). It does not provide, however, that should the clerk fail to issue notice, the order is rendered ineffective. If the legislature intended on requiring notice as a prerequisite to the effectiveness of the order, it could have provided so in this statute.[9]

Like the trial court, we acknowledge the equitable nature of foreclosure proceedings. Our Supreme Court has noted that "[w]e have no access to the legislative history of § 49-15 because the original statute was enacted prior to the inauguration of published legislative history in 1945. Legislators' remarks on subsequent amendments to § 49-15, however, emphasize that the

---

[9] To the extent that the clerk's mistake is analogous to a scrivener's error, our Supreme Court has stated that "as best we can determine, the legislature's purpose in enacting § 49-15 was not to preclude amendment to correct scrivener's errors, but rather to set out an orderly framework for a mortgagee's exercise of the equity of redemption." *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 258, 708 A.2d 1378 (1998).

purpose of § 49-15 is to ensure equitable foreclosure proceedings. For example, in 1967, when Public Acts 1967, No. 286 was enacted to delete a reference to the Circuit Court term, Representative Milton Caplan spoke in favor of the amendment, asserting that it 'would permit a party equitably to come before the court and ask to reopen a judgment of foreclosure.' 12 H.R. Proc., Pt. 6, 1967 Sess., p. 2717, [remarks of Representative Milton Caplan]." *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 258–59, 708 A.2d 1378 (1998).

In the present case, the weight of equity lies with the defendant. If the plaintiff is granted strict foreclosure on this property, it would result in a windfall. Furthermore, the plaintiff had notice of the pending motions, as well as knowledge of the scheduled law days. Moreover, the plaintiff made no colorable claim of detrimental reliance before the trial court.[10] Thus, the purpose of notice in this case, to prevent parties from expending time or money on a vested property and to protect the party's interest in the finality of the judgment, was not contravened. Ultimately, we cannot see how the court somehow would be divested of its authority to order a stay on the law days because a clerk failed to act on such order. As the trial court noted in its articulation filed May 24, 2010, " '[t]he clerk is a recording officer, and if he or she has made a mistake the court may amend the record,' " quoting *State* v. *Pena*, 16 Conn. App. 518, 533, 548 A.2d 445, cert. denied, 209 Conn. 830, 552 A.2d 1217 (1988).

Accordingly, the trial court was not precluded from exercising its authority to open the judgment where the proceeding was equitable in nature, the parties had

---

[10] The defendant's attorney represented that the plaintiff's attorney was "insistent, even though they had title or thought they had title, he cannot market the property or even risk putting money into the property to make improvements without the status of the [defendant's] mortgage being known." The plaintiff's attorney did not refute this remark.

notice of the pending motions and the court pronounced its order to stay the law days but due to the clerk's "inadvertent mistake," notice was not issued.

## II

The plaintiff next claims that the court improperly concluded that the defendant's mortgage encumbered the property and was senior to the plaintiff's mortgage. Because the court's determination of priorities is interlocutory, the plaintiff has not presented a final judgment for the purposes of appeal. Accordingly, we dismiss this claim.

We begin by setting forth our standard of review. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [over which we exercise plenary review]. . . . As our Supreme Court has explained: To consider the [plaintiff's] claims, we must apply the law governing our appellate jurisdiction, which is statutory. . . . The legislature has enacted General Statutes § 52-263,[11] which limits the right of appeal to those appeals filed by aggrieved parties on issues of law from final judgments. Unless a specific right to appeal otherwise has been provided by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . . Further, we have recognized that limiting appeals to final

[11] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

judgments serves the important public policy of min-
imizing interference with and delay in the resolution
of trial court proceedings." (Citation omitted; internal
quotation marks omitted.) *Moran* v. *Morneau*, 129
Conn. App. 349, 353–54, 19 A.3d 268 (2011).

A judgment of foreclosure constitutes an appealable
final judgment when the court has determined the
method of foreclosure and the amount of the debt. See
*Capp Industries, Inc.* v. *Schoenberg*, 104 Conn. App.
101, 109 n.5, 932 A.2d 453, cert. denied, 284 Conn. 941,
937 A.2d 696, 697 (2007). "Issues regarding priorities
between encumbrancers do not present an immediate
concern to the court when it enters a judgment of fore-
closure by sale: The property can be sold, and the funds
can remain comfortable and safe (and draw no interest)
in the clerk's trust account while priorities issues are
subsequently litigated at length and at leisure. The
nature of strict foreclosure, however, is such that a
postponement of priorities questions cannot easily
occur. . . . Priorities, then, must of necessity be deter-
mined as part and parcel of the entry of the judgment
of strict foreclosure." D. Caron & G. Milne, Connecticut
Foreclosures (4th Ed. 2004) § 5.02D3, p. 143.

In the present foreclosure action, the court issued a
decision determining the priorities of the parties. It did
not render a judgment of foreclosure,[12] determine the
method of foreclosure, or establish the total equity in
the property or the amount of debt. In a strict foreclo-
sure action, the determination of priorities without a
corresponding judgment of foreclosure is analogous to
a judgment rendered only on the issue of liability, with-
out resolution of the issue of damages. *Broadnax* v.
*New Haven*, 294 Conn. 280, 984 A.2d 658 (2009) ("[a]

[12] In fact, even if the court had rendered a judgment of strict foreclosure,
it would not be appealable until the law days were set. See *Connecticut
National Bank* v. *L & R Realty*, 40 Conn. App. 492, 494–95, 671 A.2d 1315
(1996).

judgment rendered only upon the issue of liability without an award of damages is interlocutory in character and not a final judgment from which an appeal lies" [internal quotation marks omitted]). Should the trial court alternatively order a foreclosure by sale, this court recently has concluded that the adjudication of priorities is not a final judgment for the purposes of appeal until a sale is approved and the court renders a supplemental judgment. *Moran* v. *Morneau*, supra, 129 Conn. App. 357. Thus, despite the court's use of the term "judgment" to describe its adjudication of the priorities, we conclude that the decision from which the plaintiff appeals is an interlocutory ruling.[13]

A party may appeal from an interlocutory ruling "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). In the present case, the determination of priorities does not terminate a separate or distinct proceeding because the foreclosure action is still pending in the court. The court's finding that the defendant's mortgage had priority did not invalidate the plaintiff's mortgage, which still remained in existence, subject to the defendant's priority. It is altogether possible that although the defendant's mortgage was entitled to priority, the plaintiff's subordinate claim

---

[13] Pursuant to Practice Book § 23-17 (a), "[i]n any action to foreclose a mortgage . . . any party seeking a judgment of strict foreclosure shall file, with the motion for judgment, a list indicating the order in which law days should be assigned to the parties to the action. The order of the law days so indicated shall reflect the information contained in the plaintiff's complaint, as that information may have been modified by the pleadings. Objections to the order of law days indicated on said list shall only be considered in the context of a motion for determination of priorities, which motion must be filed prior to the entry of judgment." Therefore, the appropriate procedural vehicle by which to challenge the determination of priorities is a motion.

could be affected by further proceedings. Upon the court's rendering of a final judgment of foreclosure, the plaintiff retains the right to file a timely appeal. At that time, this court may consider the propriety of the adjudication of priorities.

The order granting the motion to open the judgment of strict foreclosure is affirmed and the case is remanded for further proceedings according to law; the appeal is dismissed with respect to the remaining claims.

In this opinion the other judges concurred.